BRIGGS LAW CORPORATION [FILE: 1248.08]
Cory J. Briggs (State Bar no. 176284)
E-mail: service@briggslawcorp.com
Karen L. Skaret (State Bar no. 239779)
99 East "C" Street, Suite 111
Upland, CA 91786
Telephone: 909-949-7115
Facsimile: 909-949-7121

LAWYERS FOR CLEAN WATER, INC.
Daniel G. Cooper (State Bar no. 153576)
E-mail: cleanwater@sfo.com
Layne Friedrich (State Bar no. 195431)
Martin McCarthy (State Bar no. 194915)
1004 A O'Reilly Avenue
San Francisco, CA 94129
Telephone: 415-440-6520
Facsimile: 415-440-4155

Attorneys for Plaintiff Inland Empire Waterkeeper,
  a chapter of Orange County Coastkeeper

**JS-6**

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INLAND EMPIRE WATERKEEPER, a chapter of ORANGE COUNTY COASTKEEPER,<br><br>         Plaintiff,<br><br>    vs.<br><br>FLAVOR SPECIALTIES, INC.,<br><br>         Defendant. | Case no. ED CV 07-00478 DDP(FMOx)<br><br>**CONSENT DECREE AND DISMISSAL** |

   This Consent Decree and Dismissal ("Consent Decree") is being made on February 6, 2008 ("Execution Date"), by and between Plaintiff Inland Empire Waterkeeper, a chapter of Orange County Coastkeeper ("Waterkeeper"), on the one hand; and Defendant Flavor Specialties, Inc. ("FSI"), on the other hand.

The Parties are entering into this Consent Decree to achieve a full and final settlement of Waterkeeper's claims against FSI in this proceeding. (Throughout this Consent Decree, Waterkeeper and FSI are collectively identified as the "Parties.")

## I. BACKGROUND RECITALS

1.01. Waterkeeper is a California non-profit corporation dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of the Inland Empire and Orange County.

1.02. FSI is a California corporation engaged in the business of manufacturing food and beverage flavors, herbs, and herbal extracts in the City of Corona, California.

1.03. Pursuant to the Federal Water Pollution Control Act ("Clean Water Act" or "Act"), 33 U.S.C. § 1251 *et seq.*, and Chapter 13.08 of the Corona Municipal Code, the City of Corona has issued a pretreatment permit ("Pretreatment Permit") to FSI to regulate its discharges of wastewater into the municipality's publicly owned treatment works ("POTW").

1.04. On April 23, 2007, Waterkeeper commenced this proceeding against FSI ("Civil Action"). In general terms, Waterkeeper's complaint alleges that FSI has violated the terms of its Pretreatment Permit and thereby violated the Clean Water Act. FSI filed an answer to Waterkeeper's complaint on or about June 7, 2007. In general terms, FSI's answer denies all the material allegations in the complaint.

1.05. The Parties desire to settle the Civil Action once and for all in order to avoid the expense, delay, and uncertainty of litigation and without admitting any liability. The specific terms and conditions of this Consent Decree, as set forth in detail below, are intended to satisfy Waterkeeper's and FSI's respective desires.

## II. JURISDICTIONAL PROVISIONS

2.01. <u>Subject-Matter Jurisdiction</u>.  The Court has subject-matter jurisdiction over the Civil Action and this Consent Decree pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a), and pursuant to Section 1331 of Title 28 of the U.S. Code.

2.02. <u>Standing</u>.  Waterkeeper has standing under Article III of the U.S. Constitution to maintain the Civil Action and to enforce the terms and conditions of this Consent Decree.  FSI waives all objections to Waterkeeper's standing.

2.03. <u>Venue</u>.  Venue is proper in the Central District of California.

## III. COMPLIANCE AND OVERSIGHT PROVISIONS

3.01. <u>Compliance with Applicable Wastewater Discharge Standards</u>. Beginning on the Effective Date (defined below) and for as long as this Consent Decree is in effect ("Compliance Period"), FSI shall comply with any and all Applicable Wastewater Discharge Standards under the Clean Water Act.  As used in this Consent Decree, the term "Applicable Wastewater Discharge Standard" includes any quantitative limitation on wastewater discharges to the POTW set forth in (*i*) Chapter 13.08 of the Corona Municipal Code (as amended from time to time), including each and every permit issued thereunder to FSI; (*ii*) the Porter-Cologne Water Quality Control Act (as amended from time to time); and (*iii*) Subchapters D and N of Chapter I of Title 40 of the Code of Federal Regulations (as amended from time to time). However, the term "Applicable Wastewater Discharge Standard" excludes any standard governing wastewater discharges in any agreement between FSI and the City of Corona that is less stringent than the wastewater discharge standards set forth in Chapter 13.08 of the Corona Municipal Code.

3.02. <u>Violation of an Applicable Wastewater Discharge Standard</u>. Except as otherwise provided in Paragraphs 3.06 and 3.07, a "Violation" shall have occurred if the result of any laboratory analysis conducted by or at the direction of FSI indicates

for a given wastewater discharge sample that FSI has failed to meet any Applicable Wastewater Discharge Standard during the Compliance Period.

3.03. <u>Payments for Violation of Applicable Wastewater Discharge Standards</u>. Each Violation shall constitute a separate occurrence of a Violation of this Consent Decree. Thus, for example, a concurrent discharge into the POTW of three regulated contaminants in excess of permitted levels would constitute three occurrences of a Violation. All Payments shall be calculated as a percentage of the "Maximum Payment." For purposes of this Consent Decree, the "Maximum Payment" shall be equal to the maximum civil judicial penalty authorized under Section 1319(d) of Title 33 of the U.S. Code and under Part 19 of Title 40 of the Code of Federal Regulations (as amended from time to time) at the time the Violation occurs; currently, the maximum civil judicial penalty is $32,500.00. For the first occurrence of a Violation of any Applicable Wastewater Discharge Standard during the Compliance Period, FSI shall make a one-time payment equal to one-fourth (25%) of the Maximum Payment. For the second occurrence of a Violation during the Compliance Period, FSI shall make a one-time payment equal to one-half (50%) of the Maximum Payment. For the third occurrence of a Violation during the Compliance Period, FSI shall make a one-time payment equal to three-fourths (75%) of the Maximum Payment. For the fourth occurrence of a Violation and every subsequent Violation during the Compliance Period, FSI shall make a one-time payment equal to the Maximum Payment (100%). Each payment shall be paid to the supplemental environmental project described in Article V below. Except as otherwise provided in Paragraphs 3.06 and 3.07, payment shall be made not more than 15 days after FSI receives notice from the laboratory of the Violation. Waterkeeper shall be given prompt notice of any Violation and of any payment for a Violation.

3.04. <u>Enforcement Following Third Violation</u>: At any time following FSI's third Violation under this Consent Decree, Waterkeeper may invoke the dispute-resolution provisions of Article VI below. Waterkeeper may seek any and all relief

authorized by law, including but not limited to injunctive relief, declaratory relief, damages for harm to the environment, civil monetary penalties, and contempt sanctions to redress past violations and to prevent future violations of this Consent Decree.

3.05. <u>Reports</u>. For the duration of the Compliance Period, FSI shall provide Waterkeeper with complete copies of all documents pertaining to FSI's wastewater discharges (including but not limited to monitoring reports) that are submitted to the U.S. Environmental Protection Agency, the State Water Resources Control Board, the Regional Water Quality Control Board for the Santa Ana Region, the City of Corona, or any other public agency. Such copies shall be provided to Waterkeeper at the same time that the documents are submitted to the agency. FSI shall ensure that all information contained in the documents is accurate to the best of FSI's knowledge.

3.06. <u>Conclusiveness of Laboratory Analyses</u>. If the result of any laboratory analysis conducted by or at the direction of FSI indicates for a given wastewater discharge sample that there has been a Violation of an Applicable Wastewater Discharge Standard during the Compliance Period, the result shall be conclusive evidence of a Violation unless (*i*) not more than fourteen days after receiving the result, FSI notifies Waterkeeper in writing that FSI believes the result to have been caused by an error in the collection, shipment, handling, or analysis of the sample; (*ii*) the result of a different laboratory's analysis of a second Contemporaneous Sample (defined below) indicates that there was no Violation; and (*iii*) FSI collects and preserves a sufficient quantity of a third Contemporaneous Sample to be analyzed upon Waterkeeper's request if Waterkeeper and FSI disagree regarding the laboratory result finding a Violation. FSI's notification shall state the reasons why a result was believed to be erroneous and shall include copies of the result believed to be erroneous, the different laboratory's result indicating the absence of a Violation, and any other evidence supporting FSI's belief. FSI's timely provision to Waterkeeper of a different laboratory's result showing the absence of a Violation shall temporarily

Page 5
- - - - -

suspend FSI's duty to make any applicable payment under Paragraph 3.03. If Waterkeeper does not agree with FSI that the laboratory result finding a Violation was caused by an error in the collection, shipment, handling, or analysis of the sample, then Waterkeeper shall have up to thirty days from the date it receives FSI's notification either (*i*) to inform FSI in writing that it disagrees and request that the third Contemporaneous Sample be analyzed at a laboratory mutually agreeable to FSI and Waterkeeper; or (*ii*) be deemed to have forever withdrawn its contention that there was a Violation. If Waterkeeper does not inform FSI in writing that it disagrees and request that the third Contemporaneous Sample be analyzed within the thirty-day period, or if the laboratory analysis of the third Contemporaneous Sample confirms that there was no Violation, then the temporary payment suspension shall become permanent. Conversely, if the laboratory analysis of the third Contemporaneous Sample confirms that there was a Violation, then the applicable payment shall be reinstated. Nothing in this paragraph authorizes FSI to rely on the collection or preservation of samples or the result of any laboratory analysis that was not performed in accordance with the Clean Water Act. As used in this paragraph, "Contemporaneous Sample" shall mean an additional sample of the given wastewater discharge that was (*i*) gathered at the exact same time as the sample indicated to have been in Violation of an Applicable Wastewater Discharge Standard; (*ii*) preserved for analysis in accordance with the provisions of the Clean Water Act; and (*iii*) analyzed in accordance with the provisions of the Clean Water Act.

     3.07. *Force Majeure*. If the result of any laboratory analysis conducted by or at the direction of FSI indicates a Violation for a given wastewater discharge sample during the Compliance Period, and if FSI does not dispute the laboratory result under Paragraph 3.06, the result shall be conclusive for all purposes of this Consent Decree. Notwithstanding the foregoing, the Parties may agree that there was no Violation and that FSI is exempt from the requirement to make a payment under Paragraph 3.03 if a *force majeure* prevents FSI's compliance with this Consent Decree. As used in this

paragraph, "*force majeure*" means an earthquake, wildfire, other act of God, or act of war that is not reasonably foreseeable and for which preventative measures cannot reasonably be taken by FSI.  In order to demonstrate that there is no Violation as the result of a *force majeure*, FSI must, not more than fourteen days after receiving notice of a Violation (to the extent not prevented by the *force majeure*), notify Waterkeeper in writing that FSI believes the Violation to have been caused by a *force majeure*. FSI's notification shall identify the particular Violation believed to have been caused by a *force majeure* and shall include copies of the laboratory result and all other evidence supporting FSI's belief.  FSI's timely submission to Waterkeeper of evidence that the Violation was caused by a *force majeure* shall temporarily suspend FSI's duty to make any applicable payment under Paragraph 3.03.  If Waterkeeper does not agree with FSI that the violation was caused by a *force majeure*, then Waterkeeper shall have up to thirty days from the date it receives FSI's notification to inform FSI in writing that it disagrees and to invoke the dispute-resolution provisions of Article VI below, or be deemed to have forever withdrawn its contention that there was no *force majeure*.  If Waterkeeper does not invoke the dispute-resolution provisions of Article VI within the thirty-day period, or if the dispute-resolution process results in a finding of the absence of a Violation, then the temporary payment suspension shall become permanent.  Conversely, if the dispute-resolution process results in a finding of a Violation, then the applicable payment shall be reinstated.  For purposes of determining whether a particular discharge was caused by a *force majeure*, FSI shall have the burden of proving, by a preponderance of the evidence, that the discharge was in fact caused by a *force majeure*.

    3.08. <u>Reimbursement for Compliance-Oversight Legal Expenses</u>.  Not more than 10 days after the Effective Date, FSI shall cause a cashier's check in the amount of $10,000.00 to be issued to "Briggs Law Corporation Trust Account" on Waterkeeper's behalf for the purpose of reimbursing Waterkeeper for reasonable attorney fees, expert-witness fees, and other legal expenses incurred in connection

with Waterkeeper's oversight of FSI's compliance with this Consent Decree. Waterkeeper's attorneys may bill against this amount for their work on behalf of Waterkeeper in overseeing FSI's compliance.  At the end of the Compliance Period, any portion of the amount that was not used shall be paid to the supplemental environmental project described in Article V below.

### IV. RELEASE AND DISMISSAL PROVISIONS

4.01. <u>Mutual Release</u>.  Except for claims regarding a Party's failure to comply with any aspect of this Consent Decree, the Parties now release each other and their respective managers, members, officers, directors, shareholders, employees, agents, servants, and legal representatives from any and all claims under the Clean Water Act, the Porter-Cologne Water Quality Control Act, or Chapter 13.08 of the Corona Municipal Code, whether known or unknown, that were alleged or that could have been alleged in the Civil Action up through and including the Execution Date of this Consent Decree.

4.02.  <u>Reservation of Public-Participation Rights</u>.  Except to the extent of the release set forth in Paragraph 4.01, nothing in this Consent Decree prohibits, and nothing in it shall it be construed as prohibiting, Waterkeeper or FSI from participating in or otherwise exercising any of their respective rights (*i*) under the Clean Water Act, the Porter-Cologne Water Quality Control Act, or any other legal authority; or (*ii*) in connection with any public proceeding pertaining to FSI or its operations or wastewater discharges, including but not limited to formal or informal proceedings of the U.S. Environmental Protection Agency, the State Water Resources Control Board, the Regional Water Quality Control Board for the Santa Ana Region, or the City of Corona.

4.03. <u>Dismissal of Civil Action</u>. Provided that the Court retains jurisdiction over the Civil Action as requested below, the Civil Action shall be dismissed with prejudice upon the Court's approval of this Consent Decree.

## V. FINANCIAL PROVISIONS

5.01. <u>Supplemental Environmental Project</u>.  Not more than 10 days after the Effective Date (defined below), FSI shall cause a cashier's check in the amount of $20,000.00 to be issued to the Riverside-Corona Resource Conservation District (4500 Glennwood Drive, Building A, Riverside, CA 92501) for the purpose of funding a supplemental environmental project involving, in general terms, restoration of riparian habitat in the Temescal Creek watershed, which is itself within the Santa Ana River watershed.  The recipient's willingness to accept the funds for such purpose has been confirmed in a letter issued to Waterkeeper on or about February 1, 2008, and attached to this Consent Decree as Exhibit "A"

5.02. <u>Reimbursement of Waterkeeper's Legal Expenses</u>: Not more than 10 days after the Effective Date, FSI shall cause a cashier's check in the amount of $30,000.00 to be issued to "Briggs Law Corporation Trust Account" on Waterkeeper's behalf for the purpose of reimbursing Waterkeeper for reasonable attorney fees, expert-witness fees, and other legal expenses incurred in connection with the Civil Action.

## VI. DISPUTE-RESOLUTION PROVISIONS

6.01. <u>Informal Resolution of Disputes</u>.  If a dispute under this Consent Decree arises, or if either Party believes that a breach of this Consent Decree has occurred, the Parties shall meet and confer in good faith, either in person or via telephone, within 14 days of receiving written notification of a request for such meeting.  During the meet-and-confer process, the Parties shall discuss the dispute and use their best efforts to resolve it informally.  If either Party fails to meet and confer or if the meet-and-confer process does not resolve the dispute, then no sooner than 10 days later either Party may initiate the formal dispute-resolution process set forth in Paragraph 6.02.  The Parties may, upon mutual written consent, extend the time to conduct or complete any aspect of the meet-and-confer process.

6.02. <u>Formal Resolution of Disputes</u>: For any dispute not resolved through the meet-and-confer process, the Parties' exclusive recourse shall be moving the Court for an order enforcing the terms and conditions of this Consent Decree and for such other relief as the Court deems appropriate ("Motion").  The Party filing the Motion may request expedited review of the Motion, and the non-filing Party shall join in any such request.  If Judge Dean D. Pregerson is not available to rule on the Motion, it may be assigned to another judge pursuant to the Court's applicable rules.

6.03. <u>Legal Expenses</u>: The successful Party shall be entitled to recover all legal expenses incurred in connection with the Motion proceeding, including reasonable attorney fees and expert-witness fees, in accordance with Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d).

6.04. <u>Exclusivity of Dispute-Resolution Provisions</u>.  The provisions of this Article set forth the exclusive judicial remedy available to the Parties in the event of any dispute pertaining to or any breach of this Consent Decree.  Accordingly, no Party may initiate any judicial proceeding or pursue any judicial remedy within the scope of this Consent Decree except in accordance with the provisions of this Article.

## VII. GENERAL PROVISIONS

7.01. <u>Integration</u>: This Consent Decree constitutes and contains the entire agreement and understanding between the Parties concerning the subject matter of the Consent Decree.  Unless otherwise expressly stated in this Consent Decree, it supersedes and replaces all prior negotiations and all agreements--whether proposed or accepted, written or oral--concerning its subject matter.

7.02. <u>Mutual Drafting, Use of Titles</u>: The Parties participated equally in negotiating and drafting this Consent Decree, and nothing in it shall be construed against any particular Party on the basis that this Consent Decree was drafted by that Party.  Headings and titles are used throughout this Consent Decree solely for the convenience of the Parties and are not an integral part of it.

7.03. <u>Waiver, Remedy Selection</u>: No waiver of any breach of any term or condition of this Consent Decree shall be, nor shall it be construed to be, a waiver of any other breach of this Consent Decree, and no waiver shall be binding unless made in writing and signed by the Party waiving the breach.  A Party's pursuit or enforcement of fewer than all available remedies in the event of any breach of this Consent Decree shall not preclude that Party from pursuing or enforcing other or all available remedies in the event of any other breach of this Consent Decree.

7.04. <u>Efficacy of Copy</u>: This Consent Decree may be executed in counterparts, and each executed counterpart shall have the efficacy of a signed original. Photographic duplications of executed counterparts may be used, in the absence of any genuine issue as to their authenticity, in lieu of originals for any purpose.  Each Party's executing signature may be transmitted to the other electronically or via facsimile, and such signature shall have the same effect as an original signature.

7.05. <u>Advice of Counsel</u>: Each of the Parties has read this Consent Decree in its entirety and has had a reasonable opportunity to consult with counsel regarding the nature of this Consent Decree and the fairness and propriety of its terms and conditions.  Each Party agrees to the terms and conditions of this Consent Decree knowingly and voluntarily.

7.06. <u>Legal Expenses</u>: Except as expressly provided elsewhere in this Consent Decree, the Parties shall each bear their respective attorney fees, expert-witness fees, and other legal expenses incurred in connection with the Civil Action and this Consent Decree.

7.07. <u>Authority to Bind</u>: Each person signing this Consent Decree represents that he or she has full authority to bind the Party on whose behalf the person signs.

7.08. <u>Persons/Entities Bound</u>: This Consent Decree shall be binding on and inure to the benefit of the Parties, jointly and severally, in every capacity whatsoever, and to their successors, assigns, managers, members, officers, directors, shareholders, employees, agents, servants, and legal representatives.

7.09. <u>Notices</u>: Any and all notices or other communications required or permitted by this Consent Decree or by law to be served on or given to any of the Parties shall, unless otherwise required by law, be in writing and be deemed duly served and given (*i*) when personally delivered to the Party to whom it is directed; or (*ii*) when deposited with the United States Postal Service and sent via certified mail (return receipt requested), first-class postage prepaid. The following addresses shall be used for any and all notices:

  For Waterkeeper  Executive Director
           Inland Empire Waterkeeper
           3741 Merced Drive, Unit F2
           Riverside, CA 92503

           *and*

           Cory J. Briggs
           Briggs Law Corporation
           99 East "C" Street, Suite 111
           Upland, CA 91786

  For FSI      President
           Flavor Specialties, Inc.
           790 East Harrison Street
           Corona, CA 91719

           *and*

           Liza Perkins-Cohen
           Stradling Yocca Carlson & Rauth
           12230 El Camino Real, Suite 130
           San Diego, CA 92130-2090

           *and*

           John F. Cannon
           Stradling Yocca Carlson & Rauth
           660 Newport Center Drive, Suite 1600
           Newport Beach, CA 92660-6422

However, any Party may change the address to which notices or other communications are to be given under this Consent Decree by sending a notice of the change to the other Party at its last address to have been designated under this Consent Decree.

7.10. <u>Agency Review</u>.  Waterkeeper shall submit this executed Consent Decree to the U.S. Environmental Protection Agency and the U.S. Department of Justice for the 45-day review-and-comment period prescribed by Section 135.3 of Title 40 of the Code of Federal Regulations.

7.11. <u>Court Approval</u>.  If for any reason the Court declines to approve this Consent Decree in the form presented, the Parties shall work together to modify the Consent Decree so that it is acceptable to the Court.  If the Parties are unable to agree upon modifications within 30 days, the disagreement shall be subject to the dispute-resolution provisions set forth in Article VI above.

7.12. <u>Effective Date</u>.  This Consent Decree shall take effect on the date that the Court approves it following the 45-day review-and-comment period by the Environmental Protection Agency and Department of Justice ("Effective Date").  All obligations under this Consent Decree shall begin upon the Effective Date of this Consent Decree except as otherwise stated in this Consent Decree.

7.13. <u>Term</u>.  This Consent Decree shall be in effect for three years from the Effective Date ("Term").  During the Term, the Parties' exclusive recourse for resolving disputes between them regarding the terms and conditions of or any Party's compliance with this Consent Decree shall be the dispute-resolution provisions set forth in Article VI above.

7.14. <u>Modification of Consent Decree</u>.  This Consent Decree shall not be amended or otherwise modified except by a written agreement signed by a duly authorized representative of each Party and approved by the Court.

7.15. <u>Continuing Jurisdiction</u>.  The Parties desire for and now request the Court to retain jurisdiction over the Civil Action to enforce the terms and conditions of this Consent Decree and to resolve any and all disputes arising under it.

[This space is intentionally blank.]

Page 13
- - - - -
Consent Decree and Dismissal

1     We have read and agree to the foregoing in its entirety.

3     Dated: February ___, 2008.     INLAND EMPIRE WATERKEEPER, a Chapter of ORANGE COUNTY COASTKEEPER

    By: _____
    Garry Brown, Executive Director

Dated: February ___, 2008.     FLAVOR SPECIALTIES, INC.

    By: _____
    Robert E. Dayton, President

Approved as to form:

Dated: February ___, 2008.     LAWYERS FOR CLEAN WATER, INC.
    BRIGGS LAW CORPORATION

    By: _____
    Cory Briggs

Attorneys for Plaintiff Inland Empire Waterkeeper, a chapter of Orange County Coastkeeper

Dated: February ___, 2008.     STRADLING YOCCA CARLSON & RAUTH

    By: _____
    Liza Perkins-Cohen

Attorneys for Defendant Flavor Specialties, Inc.

**FINAL ORDER ON CONSENT DECREE AND DISMISSAL**

For good cause showing, it is now ordered, adjudged, and decreed that (*i*) this Consent Decree and Dismissal is approved; (*ii*) the Civil Action is dismissed with prejudice; and (*iii*) the Court shall retain jurisdiction over the Civil Action as requested above by the Parties.

Dated: April 9, 2008

Dean D. Pregerson, Judge
United States District Court